UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-24535-CIV-GAYLES
(14-20433-CR-GAYLES)
MAGISTRATE JUDGE P.A. WHITE

ODELIN MONTAS,

Movant,

vs.

UNITED STATES OF AMERICA,

Respondent.
_____________________________/

REPORT OF
MAGISTRATE JUDGE

## I. Introduction

This matter is before the Court on the movant's *pro se* motion to vacate, filed pursuant to 28 U.S.C. §2255, attacking the constitutionality of his sentence for conspiracy to possess with intent to distribute 500 grams or more of cocaine, entered following a guilty plea in case no. 14-20433-CR-GAYLES.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

The initial petition was filed on December 4, 2015. (CV-DE# 1). A report recommending dismissal pending the outcome of the movant's belated appeal was entered. (CV-DE# 5). After objections by the movant, the District Court declined to adopt the report and issued a stay of these proceedings pending the outcome of movant's untimely appeal. (CV-DE# 7, 10). After the movant's appeal was

dismissed the stay was lifted and the government was ordered to respond to the motion. (CV-DE# 11, 13).

Before the Court for review are the movant's §2255 motion with supporting exhibits, the government's response to the order to show cause, the movant's reply, the Presentence Investigation Report ("PSI"), Statement of Reasons ("SOR"), along with all pertinent portions of the underlying criminal file, including the plea agreement (Cr-DE#28), and the stipulated factual proffer (Cr-DE#29).

## II. Claims

Construing the §2255 motion liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 519 (1972), the movant raises four grounds for relief, essentially as follow:

1. Counsel failed to advise the movant and the court that he was engaged in disciplinary proceedings with the Florida Bar and was ordered disbarred on April 14, 2015.

2. Counsel was ineffective for allowing the movant to sign a plea agreement that included a waiver of his right to appeal any sentence imposed or to appeal any manner in which the sentence was imposed.

3. Counsel failed to meet with the movant after sentencing to discuss appeal options and failed to file a timely notice of appeal.

4. The district court erred when it failed to give the movant a two level reduction for minor role as provided in Amendment 794.

## III. Factual Background and Procedural History

On June 19, 2014 the movant, along with three others, was charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine and attempted possession with intent to distribute five kilograms or more of cocaine. On September 15, 2014, the movant entered into a negotiated plea agreement with the government. (CR-DE# 75). In that agreement, the movant agreed (1) to plead guilty to a lesser offense of Count 1 of the indictment: namely, a conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§841 and 841(a)(1); and (2) to waive his right to appeal any sentence imposed or the manner in which the sentence was imposed, unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing." In exchange, the government agreed to dismiss Count 2 of the Indictment at sentencing, recommend a 3-level reduction in the movant's guideline level pursuant to U.S.S.G. §3E1.1 for his affirmative and timely acceptance of responsibility, and recommend a sentence at the bottom of the guideline range.

In connection with the plea, the movant signed a "Factual Proffer" in which he agreed that if the case proceeded to trial, the government would be able to prove the following facts:

> In August of 2013, special agents with the Drug Enforcement Administration ("DEA") in Miami, Florida directed a confidential source ("CS") to contact co-defendant Alain Doricent, who was located in Haiti, to set up a cocaine deal. Earlier in May 2013, the CS had met with Doricent to discuss the possibility of conducting a cocaine transaction, and Doricent had provided the CS a telephone number to communicate via

WhatsApp Messenger. On August 8, 2013, the CS contacted Doricent via WhatsApp Messenger and advised him in coded language (referring to "tourists") that he/she was expecting a load of cocaine to arrive in Miami, Florida that weekend, and that he/she had access to a line of 50 kilograms that were available for sale. They agreed on a price of $26,500 per kilogram.

On August 9, 2013, Doricent gave the CS the telephone number of co-defendant Victorio Rosier as the person to contact in Miami, Florida to purchase a quantity of cocaine. On August 12, 2013, the CS contacted Victorio Rosier, who went by the name "Vic", and during several conversations, they set up a meeting for August 14, 2013. On August 14, 2013, the CS and an undercover task force officer from the Coral Gables Police Department ("UC"), met with Victorio Rosier and another co-defendant, Jean Emile Rosier, Victorio Rosier's brother, at the Latin Bohemia Restaurant in Miami, Florida. The UC wore a recording device. During the meeting, Victorio Rosier indicated he had a buyer interested in acquiring 10 kilograms on consignment. The UC refused, but suggested that they pay for a certain quantity and the UC could arrange to supply another 2 or 3 kilograms on consignment. During the meeting, Victorio and Jean Rosier made a telephone call to the defendant, Odelin MONTAS, who resided in the area of Orlando, Florida. After the telephone call to the defendant, Victorio Rosier indicated that the buyers were ready to buy five kilograms of cocaine, but they wanted the drugs to be delivered to them in Orlando, Florida.

After the meeting, the CS advised Victorio Rosier that they would not travel to Orlando, Florida to conduct the transaction. The parties agreed to do the deal the following day in Miami, Florida. The defendant then traveled to Miami, Florida with a sum of cash to purchase the cocaine.

Doricent, who continued to communicate with the CS regarding the drug transaction via his WhatsApp account, requested to receive an additional three kilograms on consignment, and the parties confirmed via WhatsApp that the deal would be for five kilograms paid in cash and three additional kilograms on consignment, to be paid for later that same day. On August 15, 2013, the parties arranged to meet at a McDonald's parking lot at 901 S.

> LeJeune Road in Coral Gables, in the Southern District of Florida. Victorio Rosier and the defendant arrived together in one vehicle and Jean Rosier arrived in a separate vehicle. The CS told Victorio ROSIER and the defendant that Doricent had asked for an additional three kilograms and had agreed to pay for it later that day. The defendants responded affirmatively. The UC then asked to see the money and he was escorted to Jean Rosier's vehicle where the UC was shown a bag with a large sum of U.S. currency in the rear passenger seat of the vehicle.
>
> The defendant and Victorio Rosier advised that they would follow the UC and the CS to the location where the cocaine was stored. The location was equipped with a video recording device. At that location, another undercover officer brought out a large duffle bag, and indicated that the eight kilograms of cocaine were inside for the defendants to inspect. The defendant and Victorio Rosier picked up a rectangular package of sham cocaine and began to inspect it, at which point they were placed under arrest. Jean Rosier was also placed under arrest near the McDonald's where the parties initially met. The cash located inside of Jean Rosier's vehicle was seized and it totaled $146,800.

(DE76).

On September 15, 2014 a thorough change of plea proceeding, pursuant to Fed.R.Cr.P. 11, was conducted by the district court. (CR-DE# 158). After movant was given the oath, the movant provided background information, including his age and educational background. He denied being under the influence of drugs, medicine, or alcohol. Movant denied suffering from, or having ever been diagnosed with, any type of mental disease or mental illness. Next, when asked whether he was able to read and understand all the term of the plea agreement, the movant responded, "Yes, your honor." He acknowledged reviewing all the terms of the plea agreement with counsel and had no questions about its terms.

The court advised the movant of the minimum and maximum

sentences. The movant understood that the sentencing guidelines would be calculated based upon an amount of cocaine between five and fifteen kilograms. He further understood that he was waiving his right to appeal his sentence unless it exceeded the statutory maximum.

The movant denied being threatened or forced to sign the plea agreement or change his plea to guilty and acknowledged that no one had promised him anything other than as set forth in the plea agreement. The court explained the right to a jury trial and its associated rights. The movant understood those rights and waived them to allow the court to accept his plea. The movant acknowledged discussing the consequences of entering the plea with counsel. He also discussed how the sentencing guidelines might apply to his case. He understood that the sentence would not be known until the guidelines were calculated and that he could not withdraw his plea if the guidelines were more than he expected. The movant agreed that he had enough time to discuss the case with counsel. He and counsel discussed all possible defenses. There were no communication problems with counsel and counsel did everything he asked. The movant was fully satisfied with counsel's representation.

Regarding the stipulated factual proffer, the movant confirmed he was able to read and understand the factual proffer. He agreed that the facts contained in the stipulated proffer were accurate. Movant confirmed that he had signed the stipulated factual proffer.

When asked how he wished to plead to the sole count of the Indictment, movant responded, "Guilty." When asked if he was pleading guilty because he was in fact guilty, the movant, responded "No, your honor," then corrected himself and responded,

"Yes, your honor, I'm sorry." Given that answer, the court repeated the question, to which the movant responded, "Yes, your honor."

Based on the movant's responses the court found the movant had "freely, voluntarily and intelligently waived [his] rights." The court found that the movant understood nature of the charges and the consequences of the plea. Based upon its review of the record the court found there was a factual basis for the plea and accepted the movant's guilty plea.

Prior to sentencing, a PSI was prepared which revealed as follows. Pursuant to U.S.S.G. §2D1.1, the base offense set at a level 30.(PSI ¶26). Three levels were then deducted from the base offense level based on movant's timely acceptance of responsibility, resulting in a total adjusted base offense level 27. (PSI ¶¶33-35). The probation officer next determined that movant had two criminal history points, resulting in a criminal history category II. (PSI ¶43). Based on a total offense level 27 and a criminal history category II, the movant's advisory guideline range was set at 78 months at the low end and 97 months imprisonment at the high end. (PSI ¶81). Statutorily, for violation of 18 U.S.C. §841(b)(1)(B), movant faced a minimum of five to a maximum of forty years imprisonment. (PSI ¶80).

Prior to sentencing, movant filed objections to the PSI. (Cr-DE# 97). Counsel argued that the movant was entitled to a reduction in his base offense level to 30 pursuant to 18 U.S.C. § 3582(c). Counsel also argued that the movant was entitled to a two level reduction because of his minor role. The government responded that the minor role reduction was not warranted because the movant had been the intended purchaser and supplied the money for the transaction. (CR-DE# 100). Counsel next argued that the movant's

criminal history was over represented by a nearly ten year old conviction, he argued that the criminal history should be reduced by one category. The government argued that the movant's criminal history was not over represented, noting the Movant's multiple arrests for which no criminal history points were assessed. Counsel also filed a sentencing memorandum in which he presented additional argument for a minimum mandatory sentence of 60 months. The memorandum included an attachment of letters from the movant's family.

The movant appeared for sentencing on November 24, 2014. (Cr-DE# 159). At sentencing counsel acknowledged that the base offense level objection had been resolved in the movant's favor. Counsel next argued for a two level minor role reduction arguing that the movant was merely present while his two co-defendants were involved in the transaction. The government responded that the movant was a buyer as established by the co-defendant's statements to the confidential source that he had found a buyer who wanted to purchase 10 kilograms of cocaine. The government contended that his created the inference that the movant had customers to whom he could sell the cocaine, especially since the wanted the seller to front him the cocaine. The government also pointed out that the movant provided the $146,000 cash to finance the purchase. The government characterized a minor player as someone who merely introduced two individuals or transported the drugs, not someone who is a principal to the transaction. The court denied the minor role reduction, finding that the movant was involved in the purchase and had traveled from Orlando to Miami to consummate the purchase. The court noted that someone who is merely a "mule or a facilitator, arguably might be a minor participant," but found such circumstances did not exist in this case.

Counsel next renewed his argument that the movant's criminal history category was overstated. Counsel pointed out that the movant had only one conviction that would not have been scored but for the fact that he violated his probation. The government, pointed out the movant's 17 arrests over 13 years in arguing that the criminal history was not overstated. The court overruled the movant's objection to his criminal history category.

The government did not object to a sentence at the bottom of the guidelines. The movant, through counsel, argued for a downward departure. Counsel pointed out that the movant would deported to Haiti after serving his sentence. Counsel also asked the court to consider the movant's family support and the movant's serious drug and alcohol issues. Based on these factors, counsel contended that a sentence of 60 months, the mandatory minimum, was appropriate.

The court considered the statement of the parties, the PSI, the advisory guidelines, and the statutory factors set forth in 18 U.S.C. §3553(a)(1-7), and sentenced the movant to a term of 78 months imprisonment, to be followed by 4 years supervised release. (Cr-DE# 109; 159, p. 16). The judgment and sentence were docketed on November 24, 2014. (CR-DE# 109).

On May 21, 2015, a letter from the movant was docketed. (CR-DE# 143). In the letter the movant requested permission to file a belated appeal. He stated that counsel had failed to meet with him after sentencing to discuss appeal options. Unbeknownst to the movant, counsel had been suspended the week of his sentencing. The movant claimed to have made multiple attempts to contact counsel to no avail. He claimed he had been coerced to sign the plea agreement and had recently discovered that he only had 14 days to file an appeal. He requested that an attorney be appointed for purposes of

appeal. In response to this letter, on June 22, 2015, the court appointed the Federal Public Defender's Office to represent the movant.

On June 22, 2015, the movant, through newly appointed counsel, filed a notice of appeal. (CR-DE# 147). While the appeal was pending the movant filed the instant motion. (CR-DE# 165). A report was entered recommending dismissal pending resolution of the appeal, however the report was not adopted and the court entered an order staying the motion pending the outcome of the appeal. (CR-DE# 167). On April 4, 2016, the appeal was dismissed as untimely. (CR-DE# 168).

On April 14, 2016 the movant filed a motion to reduce sentence pursuant to Amendment 782 of the Sentencing Guidelines. (CR-DE# 169). The motion was denied on June 24, 2016 because the defendant's sentencing guideline range had been determined based on the base offense level reduction provided by Amendment 782. (CR-DE# 176).

## IV. Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. See 28 U.S.C. §2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass

of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). It is also well-established that a §2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . "

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." Frady, 456 U.S. at 152; McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001); Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn, 365 F.3d at 1232-33 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)).

If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain

this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment). Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that movant is entitled to no relief, therefore, no evidentiary hearing is warranted.

**A. Guilty Plea Principles**

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). To be voluntary and knowing, (1) the

guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)(table); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. den'd, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id.; see also, United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005)(*per curiam*); United States v. Moriarty, 429 F.3d 1012 (11th Cir. 2005).[1]

---

[1] In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that

In other words, a voluntary and intelligent plea of guilty made by an accused person must therefore stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. Brady v. United States, 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. See Santobello v. New York, 404 U.S. 257 (1971).

**B. Ineffective Assistance of Counsel Principles**

Because the movant suggests in the motion that counsel rendered ineffective assistance, this Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 788 (2011). See also Premo v. Moore, 562 U.S. 115, 121-22, 131 S.Ct. 733, 739-740 (2011); Padilla v. Kentucky, 559 U.S. 356, 367, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). If the movant cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs). See also

---

he gives under oath.

Id.

Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004); Brown v. United States, 720 F.3d 1316 (11th Cir. 2013).

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008)(citations omitted); Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000). With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); Allen v. Sec'y, Fla. Dep't of Corr's, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).

In the context of a guilty plea, the first prong of Strickland requires petitioner to show that the plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would have entered a different plea. Hill, 474 U.S. at 56-59. If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Dingle v. Sec'y for Dep't of Corr's, 480 F.3d 1092, 1100 (11th Cir.), cert. den'd, 552 U.S. 990 (2007); Holladay v. Haley,

209 F.3d 1243, 1248 (11th Cir.), reh'g and reh'g en banc den'd by, Holladay v. Haley, 232 F.3d 217 (11th Cir.), cert. den'd, 531 U.S. 1017 (2000).

Moreover, in the case of alleged sentencing errors, the movant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

Furthermore, a §2255 movant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012); Garcia v. United States, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991), cert. den'd Tejada v. Singletary, 502 U.S. 1105 (1992); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990)(citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); United States v. Ross, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." Chandler, 218 F.3d at 1313. This is because the test is

not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

## V. Timeliness and Procedural Bar

The government does not contest the timeliness of the motion, nor does the government argue that the claims raised are procedurally barred.

## VI. Discussion

### A. Counsel's Disciplinary Proceedings

In claim 1, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to advise him or the court that he was engaged in disciplinary hearings. According to the movant counsel was involved in disciplinary proceedings before the Florida Bar during the time that counsel was representing him. The movant does not allege in his motion how he was prejudiced by the fact that counsel was facing disciplinary proceedings at the time of his representation.

The fact that counsel was engaged in disciplinary proceedings standing alone, does not establish that counsel was *per se* ineffective. See, United States v. Mouzin, 785 F.2d 682, 697 (9th Cir. 1986)("[T]he fact that an attorney is suspended or disbarred does not, without more, rise to the constitutional significance of ineffective counsel under the Sixth Amendment. Rather, a defendant must ordinarily point to specific conduct which prejudiced him in order to raise the constitutional claim.") Here the movant, in his initial motion, did not allege that counsel was suspended or disbarred while representing him. However, in his reply to the government's response he did allege that counsel was suspended at the time of sentencing. It is true that counsel was engaged in disciplinary proceedings and an order of suspension was entered on September 24, 2014. That order provided counsel thirty days to cease representation of any client. However, on October 23, 2014 the Florida Supreme Court granted counsel's unopposed motion for extension of time to close out his practice and made its September 24 order effective December 15, 2014. The Florida Bar v. Lewis, 2014 WL 5422100 (Fla. Oct. 23, 2014). Thus counsel was not suspended until after his representation of the movant had concluded. In the absence of any particular claim of conduct that prejudiced the movant, this claim should be denied.

For the first time in his reply, the movant presents additional support for this claim by pointing to alleged shortcomings of counsel performance. He alleges that counsel was was "not a lawyer" and was completely unqualified to handle the movant's case. He claims that counsel (1) failed to adequately counsel him and failed to forward discovery; (2) did not interview any witnesses; (3) failed to conduct any form of pretrial investigation; (4) failed to keep the movant adequately apprised of

pretrial preparation; (5) failed to conduct an adequate review of the government's documentary evidence; and (6) failed to object to the admission of untrue documents, statements, or the money the government alleged to belong to the movant.

The law is well settled that a traverse is not the proper vehicle to raise for the first time new grounds/arguments for relief. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994) (traverse is not proper pleading to raise additional grounds for relief); see also, Klauer v. McNeil, No.3:07CV541, 2009 WL 2399928, at *30 (N.D.Fla. July 31, 2009); Cleckler v. McNeil, No.3:07CV283, 2009 WL 700828, at *11 n.4 (N.D.Fla. Mar.16, 2009). The Eleventh Circuit, in an analogous situation has determined that "[s]imilar considerations bar an appellant from raising a new issue in a reply brief." See Herring v. Sec'y, Dep't of Corr's, 397 F.3d 1338 (11th Cir. 2005) (arguments raised for the first time in a reply brief are not properly before a reviewing court); United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (citation omitted); United States v. Whitesell, 314 F.3d 1251, 1256 (11th Cir. 2002)(court need not address issue raised for first time in reply brief), cert. den'd, 539 U.S. 951, 123 S.Ct. 2628, 156 L.Ed.2d 643 (2003); United States v. Dicter, 198 F.3d 1284, 1289 (11th Cir. 1999) (issue raised for first time in reply brief waived); United States v. Martinez, 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to consider arguments raised for the first time in a reply brief).

This Court is mindful of the Clisby[2] rule that requires district courts to address and resolve all claims raised in habeas proceedings, regardless of whether relief is granted or denied.

[2]Clisby v. Jones, 960 F.2d 925, 936 (11th Cir.1992).

Clisby, 960 F.2d at 935-36 (involving a 28 U.S.C. §2254 petition filed by a state prisoner); see Rhode v. United States, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that Clisby applies to §2255 proceedings). However, nothing in Clisby requires, much less suggests, consideration of claims or arguments raised for the first time in a traverse. Therefore, to the extent the movant's arguments raised for the first time in his traverse are viewed as new or additional claims, they are not properly before the court, and should be barred from review here.[1]

Even if these additional claims were properly before the court, such claims were waived by the thorough Rule 11 change of plea proceeding during which the movant clearly indicated he had discussed the stipulated factual proffer, understood and agreed with the elements of the offense the government was required to prove, and agreed with the facts set forth in the stipulated factual proffer. If he means to suggest that his plea was not knowing and voluntary for any or all of the reasons set forth in this §2255 motion, that claim also warrants no federal relief.

It is well settled that a knowing and voluntary guilty plea waives all non-jurisdictional errors, including non-jurisdictional defects in the indictment. United States v. Brown, 752 F.3d 1344, 1347 (11 Cir. 2014). The movant's testimony at the change of plea hearing refutes all of the claims of ineffective assistance of

[1]Regardless, there is nothing of record to suggest movant's plea was anything other than knowing and voluntarily entered. Movant is also cautioned against attempting to raise in objections arguments he has not raised before the Magistrate Judge. To the extent he attempts to do so, the district court should exercise its discretion and fail to consider those arguments. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

counsel. The movant agreed that he had ample time to review the government's case with counsel and the he was satisfied with counsel's representation. The movant stipulated to the factual proffer and testified that he was entering his guilty plea because he was, in fact, guilty. Such sworn representations, as well as representations of defense counsel and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Medlock, 12 F.3d 185, 187 (11th Cir.), cert. den'd, 513 U.S. 864 (1994); United States v. Niles, 565 Fed.Appx. 828 (11th Cir. May 12, 2014)(unpublished).

Even if the movant somehow means to suggest his plea of guilty was not knowing and voluntary, that claim would also warrant no relief. See Baird v. United States, 445 Fed.Appx. 252, 254 (11th Cir. 2011) (citing Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992)). Given the thorough Rule 11 conducted by the court, there is nothing of record to suggest that the movant was misadvised or otherwise coerced to enter the guilty plea. To the contrary, counsel negotiated a plea agreement that was highly favorable to the movant, and movant voluntarily accepted it.

Had movant proceeded to trial, as suggested, and been convicted as charged, he faced a much higher sentence[1], and the government may have objected to any reduction for acceptance of responsibility. However, the plea agreement reduced his sentencing

[1]At the pretrial detention hearing, the government proffered that the movant faced a potential twenty or ten year mandatory minimum sentence. (CR-DE# 157). This proffer by the government was an accurate statement of the penalties associated with attempted possession of 5 or more kilograms of cocaine, which under 21 U.S.C. § 841(a)(1) provides for a minimum sentence of 10 years. However if the person has a prior conviction for a felony drug offense the minimum mandatory sentence is increased to 20 years. See 21 U.S.C. § 841(a)(1)(A).

exposure. In exchange for movant's guilty plea, the government agreed to reduce the movant's guideline range by three levels, reduced the amount of cocaine involved to below the threshold for a ten year minimum mandatory sentence and agreed to a sentence at the bottom of the guidelines. Had movant gone to trial, he was facing a minimum mandatory term of twenty years imprisonment. As a result of the plea he was sentenced to a total term of 78 months imprisonment.

Because the movant has given the court no reason to disregard the sworn declarations[1] he made at the plea colloquy, other than his own conclusory allegations that his attorney was ineffective, relief is due to be denied. See Winthrop-Redin v. United States, 767 F.3d 1210, 1216-17 (11th Cir. 2014). In other words, "[w]hen a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel." United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984). Movant stated at the Rule 11 proceeding that he had discussed the charge, evidence, and defenses with counsel, and rather than proceed to trial, chose to plead guilty.

It also bears mentioning that "[A]s a matter of public policy, no court should tolerate a claim of this kind, wherein the movant literally suggests in his §2255 filings that he lied during the Rule 11 hearing," "[N]or should such a movant find succor in

[1]A criminal defendant is bound by his sworn assertions and cannot rely on representations of counsel which are contrary to the advice given by the judge. See Scheele v. State, 953 So.2d 782, 785 (Fla. 4 DCA 2007)("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); Iacono v. State, 930 So.2d 829 (Fla. 4 DCA 2006)(holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").

claiming" as movant suggests here generally, that "my lawyer told me to lie" or otherwise threatened/coerced him into doing so. See Gaddis v. United States, 2009 WL 1269234, *5 (S.D.Ga.2009) (unpublished). His allegations here are clearly refuted by his sworn declarations at the Rule 11 proceeding. "[S]uch casual lying enables double-waivered, guilty-plea convicts to feel far too comfortable filing otherwise doomed §2255 motions that consume public resources." See Irick v. United States, 2009 WL 2992562 at *2 (S.D. Ga. Sept. 17, 2009). Consequently, the movant is entitled to no relief in that his plea was knowing and voluntary, and his sentence was lawful and reasonable in light of the negotiated plea and the sentence exposure he faced if convicted at trial.

**B. Appellate Waiver**

The movant next contends that counsel was ineffective for permitting the movant to sign a plea agreement that included a waiver of his right to "appeal any sentence imposed . . . or to appeal the manner in which the sentence was imposed." This is the sum and substance of the claim raised. The movant does not allege how he was prejudiced by counsel allowing him to waive his right to appeal his sentence. In the absence of claim of prejudice this claim should be denied as insufficient to warrant relief. A §2255 movant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012); Garcia v. United States, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990)(citing Blackledge v. Allison, 431

U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); United States v. Ross, 147 F. App'x 936, 939 (11th Cir. 2005).

Additionally, as discussed above his claim that counsel was ineffective for allowing him to sign the plea agreement containing the appellate waiver is barred by his knowing and intelligent guilty plea.

**C. Failure to Consult on Appeal or File Notice of Appeal**

In his next claim the movant contends that counsel was ineffective for failing to consult with him regarding an appeal or file a notice of appeal. Again, as with his claim regarding the appellate waiver, the movant has not alleged how he was prejudiced by the failure to consult with him about an appeal.

The law is clear that counsel's failure to file a direct appeal after being requested to do so by his client results in a per se constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); United States v. Stanton, 2010 WL 3705964 (11th Cir. 2010)(quoting Flores-Ortega, supra.). There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." Roe v. Flores-Ortega, supra at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed

to his attorney a desire to appeal. Id.; see also, McElroy v. United States, 2007 WL 4393955, *1 (11th Cir. 2007); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

In the case of an appeal following a guilty plea, however, the defendant is entitled to an out-of-time appeal of sentencing issues only. Flores-Ortega, 528 U.S. at 483. Only sentencing claims may be raised on an out-of-time appeal following a plea because "the few grounds upon which the guilty plea may be challenged are not limited to direct appellate review, but instead are more appropriately raised in §2255 proceedings." Montemoino at 417.

In determining if counsel had a duty to consult about an appeal there are several factors to consider. Flores-Ortega at 480. Those factors include whether the conviction followed a guilty plea, whether the movant received the sentence bargained for, whether there was an appeal waiver and whether there are non-frivolous grounds for appeal. Id. As noted by the Supreme Court, a plea of guilty "reduces the scope of potentially appealable issues" and also shows that "the defendant seeks an end to judicial proceedings." Id. "[E]vidence of nonfrivolous grounds for appeal or that the defendant promptly expressed a desire to appeal will often be highly relevant" in determining whether the movant was prejudiced by counsel's failure to consult about an appeal. Id. 484-485.

In the instant case the movant has not alleged that he requested counsel to file an appeal. He contends that counsel failed to consult with him about filing an appeal. In applying the Flores-Ortega factors to this case the court finds that counsel did not have a duty to consult. The movant, who was initially facing a mandatory minimum sentence of 20 years, entered a plea that

substantially lowered his sentence exposure. The plea agreement provided that the movant would be sentenced pursuant to the sentencing guidelines and that the minimum sentence was 5 years. The movant received exactly the sentence he bargained for in the plea agreement. Furthermore, the plea agreement contained an appeal waiver. The movant waived his right to appeal his sentence unless it exceeded the statutory maximum or was a result of an upward departure from the guideline range. Since the movant's sentence did not meet either of these criteria, the appeal waiver precluded any appeal. Finally, the movant has not contended that he was prevented from presenting any non-frivolous grounds for appeal. In fact the movant has not alleged any grounds for appeal that he wished to raise. Since counsel was under no duty to consult with the movant concerning an appeal, this claim should be denied.

D. Minor Role Reduction

In his final claim the movant argues that the trial court erred when it failed to give him a two level minor role reduction as provided in Amendment 794. The movant provides little in the way of argument on this point. He has attached a copy of his appellate brief in which the claim was raised. In the brief, he argued that the trial court erred in denying a two level minor role reduction. His argument on appeal was that the district court improperly based its denial of the reduction on three facts: "that (1) there were conversations with this defendant regarding purchases as ¶13 indicates; (2) Montas 'traveled to Miami,' and (3) [w]hether he personally possessed the cash or not,' Montas arrived with the codefendant [Victorio] Rossier to make the purchase." He argued that such consideration ran afoul of the Amendment 794 which would have been retroactively applicable on direct appeal. The movant

argued that the court's reliance on De Varon[1] was misplaced as the holding had been abrogated.

In determining whether the movant's claim that the trial court erred in denying him a minor role reduction the case of United States v. Cruickshank, 837 F.3d 1182 (11th Cir. 2016) is instructive as it addressed the issue after the effective date of Amendment 794. In Cruickshank the court recounted the list of factors set out in Amendment 794 that a court should consider in determining whether a defendant qualifies for a minor role reduction. Id. at 1193-1194. The court noted that this non-exhaustive list includes many of the same factors it had delineated in De Varon. The court also noted that Amendment 794 and other amendments "embrace the approach we took in De Varon." Id. at 1193. Thus, contrary to the movant's argument, Amendment 794 is not an abrogation of De Varon.

Since the trial court properly applied the principles of De Varon there was no error in denying the movant a two level minor role reduction in his offense level. In De Varon the court held "that a district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." De Varon at 937. The court also held that "[t]he proponent of the downward adjustment-here the defendant-always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." Id. at 939. Although it may be preferable that a district court make specific factual findings, "a district court is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense." Id. at 940.

[1] United States v. Rodriguez De Varon, 175 F.3d 930 (11th Cir. 1999)

In the instant case the court found that the movant did not qualify for a minor role based on his conduct in the offense. In ruling on the De Varon factors the court stated:

> I do not find the sufficient basis to grant a minor role reduction in this case. As paragraph 13 indicates, there were conversations with this defendant regarding the purchase as set forth in paragraph 13. After the negotiation regarding the purchase, the defendant traveled to Miami. Whether he personally possessed the cash or not, he arrived with the codefendant Rosier to make the purchase. Such is not the activity of a minor participant.

These finding by the trial court supported its ruling that the movant was not entitled to a minor role reduction. The court found that the movant had not met his burden to qualify for the reduction. Although not required, the court noted the facts supporting its decision, pointing out that the movant was involved in negotiations for the purchase, traveled from Orlando to Miami and was present for the final transaction. Since the court relied on the record to support its denial of the minor role reduction, there was no error. This claim should be denied.

Finally, when viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a

cumulative-error analysis aggregates only actual errors to determine their cumulative effect.”). Contrary to the petitioner’s apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Finally, it should further be noted that this court has considered all of the petitioner’s arguments raised in his §2255 motion. (CV-DE#1). See Dupree v. Warden, 715 F.3d 1295 (11th Cir. 2013)(citing Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, movant has failed to demonstrate he is entitled to vacatur of his conviction and sentence. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein, the claim was considered and found to be devoid of merit, warranting no discussion.

In conclusion, the record reveals that movant is not entitled to relief on any of the arguments presented as it is apparent from the extensive review of the record above that movant’s guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as appears to now be suggested. See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970).[1] See also Hill v. Lockhart, supra; Strickland v. Washington, supra. 466 U.S. 668 (1984). The sentence imposed was

[1]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

also lawful and reasonable under the circumstances, and as such, counsel was not deficient and movant suffered no prejudice as a result of counsel's failure to pursue the nonmeritorious claims raised in this collateral proceeding.

## VII. Evidentiary Hearing

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. See Schriro v. Landrigan, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). See also Townsend v. Sain, 372 U.S. 293, 307 (1963); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), *citing*, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979)(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VIII. Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the §2255 motion is clearly time-barred, Movant cannot satisfy the Slack test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the Chief Judge in the objections permitted to this report and recommendation.

## IX. Recommendations

Based on the foregoing, it is recommended that the motion to vacate be DENIED; that no certificate of appealability issue; and, that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 1st day of June, 2017.

UNITED STATES MAGISTRATE JUDGE

cc: Odelin Montas
Reg. No. 01775-104
D. Ray James
Correctional Institution
Inmate Mail/Parcels
Post Office Box 2000
Folkston, GA 31537
PRO SE

Aimee C. Jimenez
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
Email: aimee.jimenez@usdoj.gov